UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENE LE VICTOR CHILTON,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

Case No. 1:23-cv-188

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Gene Le Victor Chilton brought this civil action against defendant United States of America. This matter is now before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 6). The motion is unopposed.[1]

### I.    Plaintiff's allegations

Plaintiff has file a 55-page complaint against the United States. Plaintiff's "Statement of Claim" is that "The slaves and children of the slave trade were promise[d] 40 acre[s] and a mule." Compl. (ECF No. 1, PageID.3).[2] In the balance of the complaint, plaintiff seeks

---

[1] Plaintiff's failure to file a response to defendant's motion to dismiss is fatal to his position and deemed a waiver of opposition to the relief sought in the motion. *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013) (the plaintiff's failure to respond to a motion to dismiss its claim amounts to a forfeiture of that claim). *See also, Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (same); *Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (granting defendant's motion to dismiss where "Plaintiff fatally provides no opposition to Defendants' arguments") (citing *Scott*, *Notredan*, and *Humphrey*). While defendant's motion to dismiss can be granted on this basis alone, the undersigned will also address the merits of the motion.

[2] "The phrase '40 acres and a mule' is historically associated with Special Field Order No. 15 issued on January 16, 1865, by Union General William T. Sherman. The Order called for the redistribution of confiscated land to freedmen in 40-acre plots. However, as explained by the Court in *Marshall v. United States*, No. 09-431C, 2010 WL 125978, at *1 n. 1 (Fed. Cl. Jan. 14, 2010), the Order was never enacted into law[.]" *Wiley v. Louisiana*, No. CV 21-409-SDD-

reparation payments to each individual among "the children of the slave trade." *Id*. at PageID.4-55. The Court construes plaintiff's complaint as seeking monetary reparations for slavery.

### II. Discussion

### A. Legal standard

Defendant contends that plaintiff's lawsuit should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Federal subject-matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

A motion under Fed. R. Civ. P. 12(b)(1) may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis omitted). Here, defendant has raised a facial attack on subject matter jurisdiction.

> When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists.

---

SDJ, 2022 WL 277384 at *2 (Jan. 3, 2022), *R&R adopted*, 2022 WL 277343 (M.D. La. Jan. 28, 2022), *appeal dismissed*, No. 22-30601, 2022 WL 19226126 (5th Cir. Nov. 10, 2022).

*Id.* (internal citation omitted). Because plaintiff is proceeding *pro se*, the Court will read his complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972). However, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations," *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

### B.    Plaintiff's claim is barred by the political-question doctrine

"The political-question doctrine bars federal courts from adjudicating disputes that have been 'committed by the Constitution to another branch of government.' *Baker v. Carr*, 369 U.S. 186, 211 (1962)." *Hannon v. Loretta Lynch*, No. 2:15-CV-0718, 2016 WL 491831 at *2 (S.D. Ohio Feb. 9, 2016). The question of reparations for slavery presents a political question which the federal courts do not address. *See Hawk-Bey v. United States*, 477 Fed. Appx. 864, 866 (3d Cir. 2012) ("We conclude that, to the extent that Hawk–Bey refers to . . . reparations . . . his complaint presents political questions which the federal courts do not address."). Another federal court reached this same conclusion in *In re African American Slave Descendants Litigation*, 375 F. Supp. 2d 721 (N.D. Ill. 2005), *aff'd in part and rev'd in part on other grounds*, 471 F.3d 754 (7th Cir. 2006) stating in pertinent part:

> The Constitution commits to the Representative Branches of the United States Government the authority to resolve the issue of reparations to former slaves resulting from the Nation's role in the institution of slavery. As stated above, historians have long debated whether the issue of slavery was the actual cause of the Civil War. *See infra*, Part II.E. However, regardless of what actually caused the Civil War, it is clear that the abolition of slavery as an institution was a fundamental concern of the Representative Branches both during and after the war. *See, e.g.*, Donald G. Nieman, *Promises to Keep: African–Americans and the Constitutional Order, 1776 to the Present* 54 (Oxford University Press 1991). Under the Constitution, the war powers are reserved to the Representative Branches of the federal government. *See* U.S. Const. art. I, § 8; U.S. Const. art. II, § 2; *see also Doe v. Bush*, 323 F.3d 133, 137 (1st Cir. 2003). These powers not only include the power to declare and prosecute war, but also extend to the power to ensure a just and lasting peace following the conclusion of a war. *See Ladue & Co. v.*

3

> *Brownell*, 220 F.2d 468, 472 (7th Cir.1955) (holding that Congress may reserve the power to seize property following a formal declaration of peace). By exclusively entrusting such powers to the Representative Branches, the Constitution restricts judicial review or interference on many war-related decisions made by Congress and the President both during and after a war. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 589-90, 72 S.Ct. 512, 96 L.Ed. 586 (1952).
>
> In this case, there is a strong historical record indicating that the relief sought, reparations to former slaves following the Civil War, was considered and rejected by the Representative Branches in lieu of other forms of relief. This relief came in many forms, including wartime and post-war legislation, civil rights legislation, and constitutional amendments-all intended to ensure the liberty of the newly freed slaves and benefit them generally. . . .
>
> In conclusion, based on the historical record presented here, it is clear that both during and after the Civil War the issue of reparations to former slaves was one committed to the Representative Branches of the federal government. It was the President and Congress who prosecuted the military and political aspects of the Civil War, ultimately leading to the conclusion of the war. With a goal of preserving the Union and securing an acceptable and lasting peace, it again was the President and Congress who chose to amend the Constitution and enact civil rights legislation in an effort to provide legal equality to the newly freed slaves. Although the Representative Branches decided to take this particular course of conduct in lieu of providing reparations to former slaves, the historical record clearly demonstrates that the Constitution commits this decision to the Representative Branches. By requiring the court to second-guess the decisions of the Representative Branches made more than a century ago, Plaintiffs' Complaint presents a non-justiciable political question.

*In re African American Slave Descendants Litigation*, 375 F. Supp. 2d 721 at 758, 762 (internal citations omitted)).  *See also*, *Hannon*, 2016 WL 491831 at *2 ("This Court agrees that the Constitution commits to the representative branches of the federal government the issue of reparations for slavery.").

Plaintiff's complaint for reparations presents a non-justiciable political question. *See Hawk-Bey*, 477 Fed. Appx. at 866; *In re African American Slave Descendants Litigation*, 375 F. Supp. 2d at 758, 762; *Hannon*, 2016 WL 491831 at *2.  Accordingly, the complaint should be dismissed for lack of subject matter jurisdiction.

### III.   RECOMMENDATION

For these reasons, I respectfully recommend that defendant's motion to dismiss (ECF No. 6) be **GRANTED** and that this action be **DISMISSED**.

Date: January 24, 2024                                  /s/ Ray Kent
                                                                        Ray Kent
                                                                        U.S. Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).